Virgil K. Stimer
General Delivery
Tucson Arizona,
85726
520-260-4721

FILED ____ LODGED
RECEIVED ____ COPY

SEP 1 4 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Virgil K. Stimer,           )
                            )
      Plaintiff,            )
                            )
vs.                         )   CIV 11-582  TUC DCB
                            )
Reliant Capital Solutions,  )
LLC                         )       COMPLAINT
                            )
      Defendant.            )       Jury Trial
_____)

**JURISDICTION**

The plaintiff is citizen of the State of Arizona.  The

defendant is a corporation incorporated under the laws of the

State of Ohio with its principal place of business in Gahanna,

Ohio.  Under 15 U.S.C. § 1692k.(d), this action may be brought

in any appropriate United States district court without regard

to the amount in controversy, within one year from the date on

which the violation occurred.  This Court has jurisdiction.

1

**COMPLAINT**

1

2     This action is for money damages as the result of

3 violations by defendant of the Fair Debt Collections Practices

4 Act, Title 15 U.S.C. Debt Collection Practices.

5                    GENERAL FACTUAL ALLEGATIONS

6

7     Defendant in this action is a third-party debt collector.

8     On Friday September 17th, 2010, at 10:47 am mountain time,

9 plaintiff received a phone call on plaintiff's cell phone.

10     The call originated from the number 614-452-6097. (see

11 Exhibit A, pg. 1)

12

13     The phone number 614-452-6097 belongs to defendant. (see

14 Exhibit B, pg. 1)

15     The caller using defendant's phone was a male.

16     The caller said that he was Matt from RCS, an authorized

17 agent of the Ohio Attorney General.

18

19     The caller said that plaintiff owed money to the State of

20 Ohio.

21     The cell phone connection between plaintiff and the caller

22 was poor and so the caller said he would call back time at

23 another time.

24

25     At 7:17 pm mountain time that same day, plaintiff received

26 another call from the number 614-452-6097. (see Exhibit A. pg.

27 2)

28

1   That call was not answered.

2   No message was left on that call from 614-452-6097.

3   On Wednesday September 22nd, at 10:30 am mountain time,

4   plaintiff received a call on his cell phone.

5   The caller, who identified himself as Matt, left a voice

6

7   message.

8   The exact voice message from the cell phone is as follows:

9   "Hi Mr. Stimer, this is Matt from RCS, authorized agent of
    the Ohio Attorney General's office. Please give me a call

10  back at 866-738-3182, extension 141.  I spoke with you
    briefly but we had a bad connection.  I do need to follow up

11  with you regarding account number 8522235. Thank you."

12  (Exhibit C, refer to voice recording)

13  At 6:22 a.m., Thursday September 23rd, 2010, Plaintiff placed

14  a call to Defendant in Ohio. (witness is willing to testify to

15
    the call)
16

17  Plaintiff spoke with a woman and asked the woman about a

18  man by the name of Matt working for defendant.

19  The woman confirmed that a man by the name of Matt Ruggles

20
    worked for the defendant.
21

22  The woman said she would transfer plaintiff's call to Matt

23  Ruggles.

24  Plaintiff's call was transferred and was answered by a man

25  who identified himself as Matt.

26  Plaintiff asked for the correct spelling of Matt's last

27
    name.
28

3

1    Plaintiff told the man named Matt not to call plaintiff
2    anymore.

3    Plaintiff told Matt that Plaintiff would be contacting him
4    soon by mail.

5    On September 29th, 2010, a third-party mailed a document
6
7    titled, DEMAND FOR VERIFICATION LETTER, (see Exhibit D) to Matt
8    Ruggles at the address of the defendant. (witness is willing to
9    testify to the mailing)

10   The document is from plaintiff.

11   In the document plaintiff demanded, including but not
12
13   limited to, that Matt Ruggles provide proof of claim that Matt
14   Ruggles or defendant were authorized agents of the Ohio Attorney
15   General. (see Exhibit D, pg. 1-2)

16   In the document, plaintiff directed Matt Ruggles to send
17
18   any replies to the address of a notary public at Track Products.
     (see Exhibit D, pg. 2)
19

20   In the document, plaintiff stated that if plaintiff
21   received no answer, that Matt Ruggles admits that he and the
22   defendant are engaged in fraud and extortion. (see Exhibit D,
23   pg. 2)

24
25   The notary at the address of Track Products received no
26   reply from either defendant or from Matt Ruggles.  (see Exhibit
27   E)

28

4

Plaintiff received no reply from Matt Ruggles or from defendant.

Defendant is not an agent of the Ohio Attorney General.

Defendant's agreement with the Ohio Attorney General, (in regard to the collection of alleged debts for the State of Ohio) reads as follows:

"It is fully understood and agreed that Consultant is an independent contractor and neither Consultant nor its personnel shall at any time, for any purpose, be considered as agents or servants or employee of the Attorney General of the State of Ohio" (see Exhibit F, pg. 1 I. D. and pg. 2 I G. of Defendant's agreement with Ohio Attorney General)

Defendant falsely represented itself as an agent of the Ohio Attorney General.

Plaintiff has been damaged by defendant's false representation and unfair practices.

Plaintiff notified defendant of damages and attempted to settle the matter out of court. (see Exhibit G, witness willing to testify to mailing of the notification)

Plaintiff received no reply from defendant.


COUNT ONE, FALSE OR MISLEADING PRESENTATIONS

Plaintiff realleges and restates the foregoing jurisdictional statements and general factual allegations.

Defendant falsely represented itself as an agent of the Ohio Attorney General in an attempt to collect an alleged debt.

Defendant is in violation of The Fair Debt Collections Practices Act (FDCPA) 15 U.S.C § 1692e. False and misleading representation, which reads in pertinent part),

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

Plaintiff is entitled to receive recovery from damages under 15 U.S.C 1692k. Civil liability.

"(a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such a person in an amount equal to the sum of— (1) any actual damages sustained by such a person as a result of such a failure (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1000; or…."

COUNT TWO, UNFAIR PRACTICES

Plaintiff realleges and restates the foregoing jurisdictional statements and general factual allegations.

Defendant unfairly used its' connection with the Ohio Attorney General by falsely claiming to be an agent of the Ohio Attorney General's office in order to mislead and intimidate plaintiff in complying with defendant.

Defendant is in violation of The Fair Debt Collections Practices Act (FDCPA) 15 U.S.C § 1692f. Unfair practices, which reads in pertinent part,

> " A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section........ (10) The use of any false representation or deceptive means to collect or attempt to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff is entitled to receive recovery from damages under 15 U.S.C 1692k. Civil liability

## DEMAND

WHEREFORE, plaintiff demands judgment for money damages against Defendant together with such other and further relief as the court may deem reasonable.  The total damages plaintiff has sustained are as follows:  1. The cost of the filling fee for this court which is **$350.00,** 2. The time spent to do the research on court procedure and court rules and preparing this complaint is 232 hours at the rate of $25.00 per hour equals **$5800.00.** 3. The cost of service of summons if defendant did not waive service of summons. 4. Due to the stress Plaintiff suffered as the result of believing for a while that he was dealing with agents of the Ohio Attorney General, Plaintiff demands the court award plaintiff additional damages of **$2000.00** under 15 U.S.C 1692k. for the two aforementioned counts,

7

1  ($1000 for each count) of the violations under Title 15 U.S.C.

2  Debt Collection Practices.   Total damages plaintiff demands is

3  **$8150.00** plus cost of serving a summons if service of summons

4  was not waived.

5     WHEREFORE, plaintiff demands judgment for money damages

6

7  against Defendant together with such other and further relief as

8  the court may deem reasonable.

9

10  Dated: September 14, 2011        Virgil K Stimer

11                                  Virgil K Stimer

12                                  General Delivery
                                    Tucson Arizona 85726
                                    520 260 4721

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESIDENTIAL     BUSINESS     WIRELESS**                    Tucson, AZ    Español    Store Locator    Co

<u>View Account Documents</u>

# My Bill

## Current Balance:  $107.11 Due by  September 20, 2011

Auto Pay Scheduled For September 14

Pay Now     Print Bill

<u>View Payment History</u>
**Last Payment Received
on August 14, 2011
for $108.08**

This information is taken directly from your Verizon Wireless bill as of the date selected. It only reflects activity on your account from the Bill Period displayed.

September 25, 2010

Bill Summary

Charges By Line

## Bill Period: August 26, 2010 - September 25, 2010
Usage Details

Details for:     520-260-4721

**Voice** | Data | Roaming

<u>Download to SpreadSheet</u>                              <u>View All Voice Details</u>

## Total Voice Usage Charges: $0.00

Viewing 61 to 80 of 104 results.                       First/Previous 3| 4| 5 Next/Last All

| Date | Time | Number | Minutes | Rate | Airtime Charge |
|------|------|--------|---------|------|----------------|
| 9/09 | 1:49 PM | 520-609-3132 | 6 | Peak | -- |
| 9/09 | 3:08 PM | 520-609-3132 | 5 | Peak | -- |
| 9/09 | 5:31 PM | 406-224-9176 | 2 | Peak | -- |
| 9/10 | 3:21 PM | 520-404-8492 | 4 | Peak | -- |
| 9/14 | 12:11 PM | 520-792-1450 | 2 | Peak | -- |
| 9/15 | 9:22 AM | 000-000-0086 | 2 | Peak | -- |
| 9/15 | 3:08 PM | 406-224-9176 | 2 | Peak | -- |
| 9/16 | 3:09 PM | 520-609-3132 | 11 | Peak | -- |
| 9/17 | 10:47 AM | 614-452-6097 | 3 | Peak | -- |
| 9/17 | 11:45 AM | 520-404-8492 | 2 | Peak | -- |

Exhibit A
                                              page 1                        9/12/2011 1:03 PM

| Date | Time | Number | Minutes | Rate | Airtime Charge |
|------|------|--------|---------|------|----------------|
| 9/17 | 5:43 PM | 000-000-0086 | 1 | Peak | -- |
| 9/17 | 5:44 PM | 520-404-8492 | 5 | Peak | -- |
| 9/17 | 6:07 PM | 520-663-5656 | 2 | Peak | -- |
| 9/17 | 6:51 PM | 520-404-8492 | 4 | Peak | -- |
| 9/17 | 7:17 PM | 614-452-6097 | 1 | Peak | -- |
| 9/18 | 5:41 PM | 520-404-8492 | 4 | Off-Peak | -- |
| 9/19 | 1:08 PM | 520-404-8492 | 6 | Off-Peak | -- |
| 9/19 | 9:29 PM | 000-000-0086 | 1 | Off-Peak | -- |
| 9/20 | 6:52 AM | 520-404-8492 | 8 | Peak | -- |
| 9/20 | 3:23 PM | 520-609-3132 | 1 | Peak | -- |

**Viewing 61 to 80 of 104 results.**

First/Previous 3| 4| 5 Next/Last All

Download to SpreadSheet

**Pay Now**

---

**I Want To...**

**Related Actions**
Analyze Usage
Block Services
Change Billing Address
Change Features
Change Minutes
Change Minutes,
Text or Data
Manage Auto Pay
Manage Paperless Billing
Manage Payment Accounts
Pay Bill
Payment Option Demo
Run Account Analysis
Understanding Your Bill Demo
View Payment History

© 2011 Verizon Wireless

Site Map | Privacy | Legal Notices | Website Use | Customer Agreement | Return Policy | My Verizon Terms and Conditions | Worry Free Guarantee | Best Network





Exhibit A
page 2

# Indiana Consumer Lawyer Blog



**Indiana Consumer Law Group**
*The Law Office of Robert E. Duff*

380 Mount Zion Road, Suite C,
Lebanon, IN 46052
(800) 817-0461

**HOME**    **FIRM WEBSITE**    **ABOUT US**    **PRACTICE AREAS**    **CONTACT US**

Home > Debt Collection > Reliant Capital Solutions

**TOPICS**

Automobile Dealership Fraud
Credit Reporting
Debt Collection
Identity Theft
Lemon Law
Miscellaneous Ramblings
Of The Weird and Wacky
Other Consumer Issues

**SUBSCRIBE** 🔊

⊙ SUBSCRIBE 🔘 ⅀⅄ ⅃

**CONTACT US**

NAME:

EMAIL:

PHONE:

COMMENTS:

SUBMIT

**ARCHIVES**

March 2011
July 2010
May 2010
February 2010
December 2009
November 2009
June 2009
May 2009
April 2009
January 2009
December 2008
August 2008
April 2008
March 2008
February 2008
December 2007
September 2007
August 2007
July 2007

Posted On: **December 19, 2009** by Robert Duff

### Reliant Capital Solutions

Reliant Capital Solutions is a debt collection agency headquartered in the State of Ohio. They use a lot of different telephone numbers, but some of the numbers they use are: 866-547-5413, 866-738-3181, 866-837-5096, 614-452-6097, 614-328-0518, 614-328-0514, 614-452-6101, and 614-452-6093. I'm sure there are many others. I have a client who has filed a lawsuit against Reliant Capital Solutions alleging, among other things, that a debt collector working for Reliant Capital Solutions left voicemail messages stating and implying that he is with the "Attorney General's Office" and that a complaint has been filed against my client. The messages neglect to state that the caller is with Reliant Capital Solutions. It is a violation of the Fair Debt Collection Practices Act to falsely state that a complaint has been filed against a consumer, to fail to disclose that a communication is from a debt collector, to make a telephone call without meaningful disclosure of the caller's identity or to falsely state and/or imply that the caller is with the attorney general's office.

I believe that collectors working for Reliant Capital Solutions often represent themselves as being with or calling on behalf of the attorney general's office and use this illegal tactic to intimidate consumers and collect debt. When caught, they claim it was a mistake because they do actually work for the Ohio Attorney General (but should they Mr. Attorney General???). Apparently they do collect student loan debt that is referred to them by the Ohio Attorney General's Office. However, this does not allow them to state or imply they are with "the Attorney General's Office" and does not allow them to state they are "representing" or "calling on behalf of" "the Attorney General's Office" without disclosing that they work for Reliant Capital Solutions, all of which I believe the collectors are doing.

I believe this not only because of my client's experience, but also because I have uncovered numerous similar complaints to the Better Business Bureau and, ironically, to the Ohio Attorney General's Office of this same practice by Reliant Capital Services. HAS THIS HAPPENED TO YOU ALSO? If it has, please contact me by telephone (800-817-0461) or by e-mail (robert@robertdufflaw.com). You may be able to help my client show that this a regular practice of Reliant Capital Solutions, and I may be able to help you vindicate your rights under the Fair Debt Collection Practices Act.

Posted by Robert Duff | Permalink | Email This Post

Posted In: Debt Collection

⊙ BOOKMARK 🔳 ⅃ ⅀ ⅃

Exhibit B
page 1

Recording of voice mail will be presented for trail

Exhibit C

## DEMAND FOR VERIFICATION LETTER

September 28th, 2010

From   Virgil-Keith: Stimer, P.O.A. for VIRGIL KEITH STIMER
      c/o Track Products
      P.O. Box 1607
      St. Johns, Arizona, 85936

To   Matt Ruggles
     RELIANT CAPITAL SOLUTIONS, LLC
     750 Cross Point Road, #G,
     Columbus, Ohio 43230-6692

Re:  Two phone calls, on the dates of September 17th and 22nd, 2010, placed by a person or persons, (one person confirmed to be Matt Ruggles) from Reliant Capital Solutions, LLC,( to VIRGIL KEITH STIMER) claiming to be an authorized agent of the Ohio Attorney General and making an allegation of money owed to the State of Ohio

Dear Mr. Ruggles,

I am writing to you today in order to discover with whom I will be dealing with concerning an alleged debt owed to the state of Ohio by VIRGIL KEITH STIMER. First of all, I wish to make a distinction between myself, Virgil-Keith: Stimer and VIRGIL KEITH STIMER. I, Virgil-Keith: Stimer, am a living, flesh and blood member of mankind and living on one of the de jure republic states of the united States of America. VIRGIL KEITH STIMER is, including but not limited to, a fictional legal entity, a foreign or domestic corporation, or legal fiction or law. I am the attorney-in-fact for the legal fiction of law, VIRGIL KEITH STIMER. All communication from this point on between Reliant Capital Solutions LLC, (RCS) and VIRGIL KEITH STIMER will be exclusively in the written form, through Me, Virgil-Keith: Stimer by the United States Post Office at the address listed above. Do not call or contact VIRGIL KEITH STIMER by phone any longer.

Before I begin to address the issue of the alleged debt of VIRGIL KEITH STIMER, I require that you confirm to me, through a verified letter, that your name is actually Matt Ruggles, (or Matthew Ruggles) and that you are not using a pseudonym. In addition, since you have made the claim that you are an authorized agent of the Ohio Attorney General, another requirement is that you state specifically, in the same verified letter, from whom you or RCS derive the authority from to be called agents of the Ohio Attorney General.

The parameters of a verified letter are as follows,

    1. A letter to Me, Virgil-Keith: Stimer (with an RCS letter head), sent to the address at the top of this letter, and
    2. the envelope of said letter to have a post date no later than three days after receipt of this letter, and
    3. you declaring what your true name is, and
    4. Stating from whom you or RCS derive the authority from to be an authorized agent of the

Ohio Attorney General, and

5. The verified letter is to have your signature witnessed and certified by an Ohio State notary and the contents of the said letter to be sworn to by you under oath, with the following words written or typed just before your signature, "I, Matt, (or Matthew) Ruggles swear or affirm under oath that the contents of this document are true and correct, and

6. Your signature and oath is to be notarized by an Ohio State notary.

If I do not receive a verified letter as defined by all of the six parameters listed above, it will be assumed as fact by both of us, that you are using a pseudonym and that you have no authority to call yourself and RCS, an authorized agent of the Ohio Attorney General and that you and RCS are engaged in attempted fraud and extortion.

A notary at Track Products, at the address listed above will be standing by to receive your verified letter to give to me. If in the event that you should not respond, the notary will certify your lack of response.

Sincerely

*Virgil-Keith: Stimer*   Date _____ 09/28/2010 _____
Virgil-Keith: Stimer

## NOTARY CERTIFICATION OF NON-RESPONSE

I, Jack Mecham, notary for the state of Arizona, do certify and verify that I have received no correspondence at any time for Virgil –Keith:  Stimer from Matt Ruggles or from Reliant Capital Solutions, LLC of Ohio.

Seal

```
Jack B. Mecham
NOTARY PUBLIC - ARIZONA
APACHE COUNTY
My Commission Expires
July 14, 2013
```

STATE OF ARIZONA      )

)

COUNTY OF APACHE   )

Date _Sep. 9TH_____, 2011

Notary signature

_July 14 2013_____

My Commission Expires

## DELINQUENT DEBT COLLECTION CONSULTANT AGREEMENT
## BETWEEN THE
## OHIO ATTORNEY GENERAL
## AND
## RELIANT CAPITAL SOLUTIONS, LLC

THIS AGREEMENT is between the Ohio Attorney General (hereinafter "Attorney General"), located at 30 East Broad Street, 17th Floor, Columbus, Ohio 43215-3400, and Reliant Capital Solutions, LLC (hereinafter "Consultant"), located at 750 Cross Pointe Road, Suite G, Gahanna, OH 43230.

The parties agree as follows:

### I.   NATURE OF CONTRACT

A.  The Attorney General represents the State of Ohio in the recovery of its delinquent debts. The State's delinquent accounts are comprised of all types of debts owed to various state agencies ("Account" or "Accounts").  The scope of the collection work for this contract may include any type of Account owed to the State of Ohio in all eighty-eight (88) Ohio counties and throughout the United States.

B.  Accounts will be assigned to the Consultant at the discretion of the Attorney General. Assignment of Accounts will be made based on Account type (also known as product type). The specific percentage of the Accounts of one or more Account types allocated to the Consultant will be determined at the discretion of the Attorney General. These assignments will be made by the Attorney General in writing, including email, and are subject to change during the course of this Agreement. After an initial assignment of Account type is made, individual Accounts will be electronically assigned to Consultant for collection.  All assignments of Accounts are subject to the terms and conditions of this Agreement.

C.  The Attorney General may recall an Account at any time for any reason. At the time of recall, all collection activity by Consultant shall immediately cease. No reimbursements will be made by the Attorney General in the event of recall. However, Consultant's commission may be paid, at the Attorney General's discretion, on payments received within ten (10) days of the recall. Recalled Accounts may be assigned to another Consultant.

D.  Consultant shall be employed as an independent contractor, to fulfill the terms of this Agreement and to act as a consultant to the Attorney General.  It is specifically understood that the nature of the services to be rendered under this Agreement are of such a personal nature that the Attorney General is the sole judge of the adequacy of such services.

E.  The Attorney General enters into this Agreement in reliance upon Consultant's representations that it has the necessary expertise and experience to perform its obligations hereunder, and Consultant warrants that it does possess the necessary expertise and experience.

F.  Consultant shall perform the services to be rendered under this Agreement and the Attorney General shall not hire, supervise, or pay any assistants to Consultant in its performance of services under this Agreement.  The Attorney General shall not be required to provide any training to Consultant to enable it to perform services required hereunder.

G.  The Attorney General and Consultant agree that Consultant shall be responsible for all of its own business expenses, including, but not limited to, computers, email and internet access,

software, phone service and office space. Consultant will also be responsible for all licenses, permits, employees' wages and salaries, insurance of every type and description, and all business and personal taxes, including income and Social Security taxes and contributions for Workers' Compensation and Unemployment Compensation coverage, if any.

E.   While Consultant shall be required to render services described hereunder for the Attorney General during the term of this Agreement, nothing herein shall be construed to imply, by reason of Consultant's engagement hereunder as an independent contractor, that the Attorney General shall have or may exercise any right of control over Consultant with regard to the manner or method of Consultant's performance of services hereunder.

F.   Except as expressly provided herein, neither party shall have the right to bind or obligate the other party in any manner without the other party's prior written consent.

G.   It is fully understood and agreed that Consultant is an independent contractor and neither Consultant nor its personnel shall at any time, or for any purpose, be considered as agents, servants, or employees of the Attorney General or the State of Ohio.

## II.   SCOPE OF WORK

A.   Consultant shall perform the services as set forth in this Agreement and in Exhibit A, Scope of Work.

B.   All collectors and call centers performing work under this Agreement must be located in the State of Ohio.

C.   Consultant shall at all times (during and subsequent to the contract period) limit the use of debtor information to the sole purpose of the collection of Accounts by staff who are in a secure area. The staff members of Consultant who handle these Accounts must be dedicated exclusively to the work under this Agreement, and must be the only staff of Consultant to have access to debtor data and information provided by the Attorney General. Consultant shall make no private use of such information in any manner. Violation of this section may result in the termination of the contract and other legally authorized sanctions by the Attorney General.

## III.   PERFORMANCE STANDARDS AND EVALUATIONS

A.   Consultant shall conduct business in a manner that supports the Attorney General's goal of fair and equitable treatment of debtors during the collection of debts. At a minimum, fair and equitable treatment means debt collection without harassment or verbal abuse of the debtor, or compromising the debtor's rights. The Attorney General expects Consultant to provide services to the public in a manner that will preserve or enhance goodwill between the public and the State of Ohio.

B.   If Consultant substantially increases Consultant's collection rate, while maintaining quality customer service of assigned claims, Consultant may be eligible to have an increase in the number of claims assignments made by the Attorney General. If Consultant does not have a successful collection rate as determined by the Attorney General, the Attorney General may decrease Consultant's assignments or terminate Consultant in accordance with Article XI.

C.   On a quarterly basis, the Attorney General shall conduct a performance review of Consultant, subject to the following terms and conditions:

Exhibit F
page 2

1.  Performance reviews may include, but are not limited to the following areas: collection ratios, performance measures based on historical averages and comparisons of new and old Accounts and various Account types, customer service complaints, reports, site visits, interaction with the Attorney General, and interviews.

2.  The Attorney General may communicate in writing any additional specific performance review requirements.

3.  As a result of this review, the Consultant's inventory of claims may be increased or decreased, or this Agreement may be terminated, at the sole discretion of the Attorney General.

4.  Consultant will be afforded an opportunity to discuss any significant issues resulting from the quarterly performance reviews with the Attorney General.

D.  Consultant agrees to follow the Code of Ethics and Professional Responsibility promulgated by the American Collectors Association, Inc., which is attached as Exhibit B to this Agreement and incorporated by reference.

E.  The Attorney General has zero tolerance for collection actions or activities that demonstrate anything less than complete respect for the rights and reasonable expectations of the public. Any violation of this provision shall result in termination pursuant to Article VIII.

## IV.   TIME OF PERFORMANCE

A.  The services as stated in Exhibit A, Scope of Work, shall be commenced on October 1, 2009 and concluded on or before June 30, 2010.

B.  This Agreement shall remain in effect until the work described in Exhibit 1, Scope of Work, is completed to the satisfaction of the Attorney General and until Consultant is paid in accordance with Article VII, Compensation, or until terminated as provided in Article VIII, Termination of Consultant's Services, whichever is sooner.

C.  Notwithstanding the foregoing, this Agreement shall expire no later than June 30, 2010.  The Attorney General may renew this Agreement for an additional one year term on the same terms and conditions by giving written notice prior to expiration.  As the current General Assembly cannot commit a future General Assembly to expenditure, this Agreement and any renewal shall expire no later than June 30, 2011.

D.  It is expressly agreed by the parties that none of the rights, duties, and obligations herein shall be binding on either party if award of this Agreement would be contrary to the terms of Ohio Revised Code ("O.R.C.") Section 3517.13, O.R.C. Section 127.16, or O.R.C. Chapter 102.

## V.   COMPENSATION

A.  Consultant shall be compensated only for the satisfactory performance of services provided as set forth in the Agreement. Consultant shall be compensated only in accordance with the express written provisions of this Agreement and shall not receive reimbursement for expenses incurred in the performance of duties in accordance with the terms of this Agreement.

B.   Consultant will be paid on a contingency fee basis on Accounts assigned to Consultant. The standard contingency fee for any Accounts assigned to Consultant for delinquent debt collection will be twenty-one percent (21%), except for:

1.   State Funded University Hospital receivables will pay a contingency fee of fourteen percent (14%).

2.   Federal student loans placed with Consultant on or after July 1, 2008 will pay a contingency fee of eighteen percent (18%).

3.   Consultant will receive a zero percent (0%) fee on any account balances offset by the State or IRS via any tax offset program.

C.   The Attorney General reserves the right to modify the standard contingency fee on Accounts assigned to Consultant by notifying Consultant in writing of any change.

D.   The Attorney General will determine the payment method and schedule for compensation distributed to Consultant.

E.   Consultant shall not be reimbursed for travel, lodging or any other expenses incurred in the performance of this Agreement.

## VI.   FIDELITY BOND

A.   Consultant shall maintain a fidelity bond in the amount of one million dollars for the duration of the Agreement. Such bond shall serve to protect the Attorney General against any loss through failure of Consultant, its Subcontractors, agents, or employees to perform in accordance with the terms and conditions of the contract, for any acts of theft, embezzlement, and/or lost funds, malfeasance, misfeasance, gross negligence and similar misconduct committed by Consultant, its employees or agents, and/or to reimburse the Attorney General for services performed in the event of default by Consultant. If Consultant forwards any collection Accounts to any other party for support services, such party must be covered by the original Consultant's bond. All bonds must be executed by a company authorized to do business in the State of Ohio. A copy of the bond must be furnished with receipts or other satisfactory evidence establishing the payment of premiums at the time of execution of this Agreement.

## VII.   CERTIFICATION OF FUNDS

A.   It is expressly understood and agreed by the parties that none of the rights, duties, and obligations described in this Agreement shall be binding on either party until all relevant statutory provisions of the Ohio Revised Code, including, but not limited to, O.R.C. Section 126.07, have been complied with, and until such time as all necessary funds are available or encumbered and, when required, such expenditure of funds is approved by the Controlling Board of the State of Ohio, or in the event that grant funds are used, until such time that the Attorney General gives Consultant written notice that such funds have been made available to the Attorney General by the Attorney General's funding source.

## VIII.   TERMINATION OF CONSULTANT'S SERVICES

A.   The Attorney General may, at any time prior to the completion of services by Consultant under this Agreement, suspend or terminate this Agreement with or without cause by giving

written notice to Consultant. The Attorney General may terminate the contract for its convenience or any reason including, but not limited to (1) default by Consultant; (2) the lack of need for the services as specified under this Agreement; or (3) if the Attorney General deems termination to be in the best interest of the State. Default is defined as the failure by Consultant to specifically perform in accordance with the specifications, terms, and conditions of this Agreement.

B.   Consultant, upon receipt of notice of suspension or termination, shall cease work on the suspended or terminated activities under this Agreement, suspend or terminate all subcontracts relating to the suspended or terminated activities, take all necessary or appropriate steps to limit disbursements and minimize costs, and, if requested by the Attorney General, furnish a report, as of the date of receipt of notice of suspension or termination, describing the status of all work under this Agreement, including, without limitation, results, conclusions resulting there from, and any other matters the Attorney General requires.

C.   Consultant shall be paid for services rendered up to the date Consultant received notice of suspension or termination, less any payments previously made, provided Consultant has supported such payments with detailed factual data containing services performed and hours worked. In the event of suspension or termination, any payments made by the Attorney General for which Consultant has not rendered services shall be refunded. Consultant shall not be entitled to any fee for any collections made or received, or any payment made by the debtor, after termination or non-renewal even if the collection or payment is made pursuant to a payment plan established by Consultant.

D.   In the event this Agreement is terminated prior to its completion, Consultant, upon payment as specified, shall deliver to the Attorney General all work products and documents which have been prepared by Consultant in the course of providing services under this Agreement. All such materials shall become, and remain the property of, the Attorney General, to be used in such manner and for such purpose as the Attorney General may choose. If Consultant is removed from any Account or if this Retention Agreement is terminated or is not renewed upon expiration, then Consultant will timely transfer the work back to the Attorney General and cooperate with the Section Chief of the Revenue Recovery Services Section or his/her designee in effecting this transfer.

E.   Consultant agrees to protect the Attorney General's interests in any transfer of work. Final payment to Consultant may be withheld if Consultant fails to transfer all files, documents, and materials when so requested by the Ohio Attorney General.

F.   Consultant agrees to waive any right to, and shall make no claim for, additional compensation against the Attorney General by reason of such suspension or termination.

G.   Consultant may terminate this Agreement upon thirty (30) days prior written notice to the Attorney General.

## IX.   RECORD KEEPING

A.  During performance of this Agreement and for a period of three years after its completion, Consultant shall maintain auditable records of all charges pertaining to this Agreement and shall make such records available to the Attorney General as the Attorney General may reasonably require. Consultant is responsible for costs incurred for storing and providing these records.

B.  Consultant shall keep all financial records and other documents related to this Agreement in a manner consistent with generally accepted accounting procedures. All records and related documents shall be filed in a manner so that they are easily accessed and located.

C.  The Attorney General reserves the right to audit the financial and business records that are associated with the Attorney General Accounts and related cash receipts of Consultant to assure that proper reporting and remittance are submitted to the Attorney General. This audit may be performed by the Attorney General, internal audit staff, independent accountants, or the Auditor of the State. The Attorney General is responsible for the cost of such audit unless the audit establishes grounds for termination of the contract. If the audit results in termination, Consultant shall reimburse the cost of the audit.

## X.   RELATED AGREEMENTS

A.  The work contemplated in this Agreement is to be performed by Consultant, who may subcontract without the Attorney General's approval for the purchase of articles, supplies, components, or special mechanical services that do not involve the type of work or services described in Exhibit 1, Scope of Work, but which are required for its satisfactory completion.

　　1.  At the time of execution of this Agreement, Consultant shall furnish to the Attorney General a list of any subcontractors performing work contemplated in this Agreement, their addresses, tax identification numbers, and the dollar amount of each subcontract.

　　2.  Consultant shall not enter into other subcontracts related to the work contemplated in this Agreement without prior written approval by the Attorney General. All work subcontracted shall be at Consultant's expense.

B.  Consultant shall bind its subcontractors to the terms of this Agreement, so far as applicable to the work of the subcontractor, and shall not agree to any provision which seeks to bind the Attorney General to terms inconsistent with, or at variance from, this Agreement.

C.  Consultant warrants that it has not entered into, nor shall it enter into, other agreements, without prior written approval of the Attorney General, to perform substantially identical work for the State of Ohio such that the product contemplated hereunder duplicates the work called for by the other agreements.

## XI.   CONFLICTS OF INTEREST AND ETHICS COMPLIANCE

A.  No personnel of Consultant or member of the governing body of any locality or other public official or employee of any such locality in which, or relating to which, the work under this Agreement is being carried out, and who exercise any functions or responsibilities in connection with the review or approval of this Agreement or carrying out of any such work, shall, prior to the completion of said work, voluntarily acquire any personal interest, direct or indirect, which is

incompatible or in conflict with the discharge and fulfillment of his or her functions and responsibilities with respect to the carrying out of said work.

B.   Any such person who acquires an incompatible or conflicting personal interest, on or after the effective date of this Agreement, or who involuntarily acquires any such incompatible or conflicting personal interest, shall immediately disclose his or her interest to the Attorney General in writing.  Thereafter, he or she shall not participate in any action affecting the work under this Agreement, unless the Attorney General shall determine in its sole discretion that, in the light of the personal interest disclosed, his or her participation in any such action would not be contrary to the public interest.

C.   Consultant represents, warrants, and certifies that it and its employees engaged in the administration or performance of this Agreement are knowledgeable of and understand the Ohio Ethics and Conflicts of Interest laws and Executive Order No. 2007-01S.  Consultant further represents, warrants, and certifies that neither Consultant nor any of its employees will do any act that is inconsistent with such laws and Executive Order.  The Governor's Executive Orders may be found be accessing the following website:
http://governor.ohio.gov/GovernorsOffice/ExecutiveOrdersDirectives/tabid/105/Default.aspx.

## XII.   NONDISCRIMINATION OF EMPLOYMENT

A.   Pursuant to O.R.C. Section 125.111 and the Attorney General's policy, Consultant agrees that Consultant, any subcontractor, and any person acting on behalf of Consultant or a subcontractor, shall not discriminate, by reason of race, color, religion, sex, sexual orientation, age, disability, military status, national origin, or ancestry against any citizen of this state in the employment of any person qualified and available to perform the work under this Agreement.

B.   Consultant further agrees that Consultant, any subcontractor, and any person acting on behalf of Consultant or a subcontractor shall not, in any manner, discriminate against, intimidate, or retaliate against any employee hired for the performance of work under this Agreement on account of race, color, religion, sex, sexual orientation, age, disability, military status, national origin, or ancestry.

C.   Consultant represents that it has a written affirmative action program for the employment and effective utilization of economically disadvantaged persons pursuant to R.C. 125.111(B) and has filed an Affirmative Action Program Verification form with the Equal Employment Opportunity and Affirmative Action Unit of the Department of Administrative Services.

## XIII.   RIGHTS IN DATA AND COPYRIGHTS/PUBLIC USE

A.   The Attorney General shall have unrestricted authority to reproduce, distribute and use (in whole or in part) any reports, data or materials prepared by Consultant pursuant to this Agreement.  No such documents or other materials produced (in whole or in part) with funds provided to Consultant by the Attorney General shall be subject to copyright by Consultant in the United States or any other country.

B.   Consultant agrees that all original works created under this Agreement shall be made freely available to the general public to the extent permitted or required by law until and unless specified otherwise by the Attorney General.  Any requests received by Consultant should be referred to the Attorney General.

### XIV.   CONFIDENTIALITY

A.  Consultant shall not discuss or disclose any information or material obtained pursuant to its obligations under this Agreement without the prior written consent of the Attorney General.

B.  All provisions of this Agreement relating to "confidentiality" shall remain binding upon Consultant in the event of cancellation.

C.  The parties agree that neither Consultant, nor any partner, associate, employee, or any other person assisting with this Agreement shall publish any material, including online publications, or speak to or otherwise communicate with any representative of a television station, radio station, newspaper, magazine, website, or any other media outlet concerning the work outlined or contemplated by this Agreement without first obtaining approval of the Section Chief of the Revenue Recovery Services Section and/or the Director of Media Relations of the Attorney General. Consultant shall not speak on behalf of the Ohio Attorney General to any member of the news media.

D.  Consultant shall not state or imply in any manner, including in commercial advertising, that its services are endorsed or preferred by the Attorney General. The Attorney General may not be used as a reference for Consultant, without the Attorney General's prior approval.

E.  Consultant shall consult with the Section Chief of the Revenue Recovery Services Section before responding to any public records request related to this Agreement. Moreover, Consultant shall not disclose any information obtained in performing its services hereunder in violation of any State or Federal law, including, but not limited to, the Family Educational Rights and Privacy Act ("FERPA") and/or the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as the same may be amended or modified from time to time.

F.      Consultant shall instruct Consultant's employees to use a high degree of care to keep confidential all information concerning the State of Ohio's client data, its business, its financial affairs, the relations with its citizens and its employees, as well as any other information which may be specifically classified as confidential in writing by the Attorney General.

G.      Consultant shall maintain and file a written policy and enforced practice for the safeguarding of a debtor's identity, including social security numbers, identification number, and other information that could be used to debtor disadvantage with the Section Chief of Revenue Recovery Services Section. The policy shall include secure destruction of data under supervision, and Consultant shall enforce the prohibition of the unauthorized acquisition or retention of information by support staff and personnel, including social security numbers. Consultant must submit a copy of this policy to the Attorney General at the time of contract execution.

### XV.   LIABILITY

A.  Consultant agrees to indemnify and to hold the Attorney General and the State of Ohio harmless and immune from any and all claims for injury or damages arising from this Agreement which are attributable to Consultant's own actions or omissions or those of its trustees, officers, employees, subcontractors, suppliers, third parties utilized by Consultant, or joint venturers while acting under this Agreement. Such claims shall include any claims made under the Fair Labor Standards Act or under any other federal or state law involving wages, overtime, or employment matters and any claims involving patents, copyrights, and trademarks.

B.  Consultant shall bear all costs associated with defending the Attorney General and the State of Ohio against any claims.

C.  In no event shall either party be liable to the other party for indirect, consequential, incidental, special, or punitive damages, or lost profits.

D.  In conjunction herewith, Consultant agrees, at its own cost, to procure and continue in force at all times that this contract is in effect, in its name, general liability insurance against any and all claims for injuries to persons or damage to property occurring or arising out of Consultant's obligations set forth herein.  Such insurance shall at all times be in an amount not less than Five Hundred Thousand Dollars ($500,000) on account of bodily injury to or death of one (1) person, and One Million Dollars ($1,000,000) on account of bodily injuries or death of more than one person as a result of any one accident or disaster, and Two Hundred Fifty Thousand Dollars ($250,000) for property damage in any one accident.  Such insurance shall be written by a company or companies authorized to engage in the business of general liability insurance in the State of Ohio with an A.M. Best rating of at least "A" or be otherwise approved in writing by the Attorney General.  A certificate reflecting the continuing coverage of all such policies procured by Consultant in compliance herewith shall be delivered to the Attorney General at least thirty (30) days prior to the time such insurance is required to be carried by Consultant, and thereafter at least thirty (30) days prior to the expiration of any policies.  Such insurance shall name the Attorney General and the State of Ohio as additional insureds.  Such policies shall bear an endorsement stating that the insurer agrees to notify the Attorney General not less than thirty (30) days in advance of any proposed modification or cancellation of any such policy.

## XVI.  COMPLIANCE WITH LAWS

A.  Consultant, in the execution of its duties and obligations under this Agreement, agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances.

B.  Consultant affirms that it has all of the approvals, licenses, or other qualifications needed to conduct business in Ohio and all are current.  If at any time during the contract period Consultant, for any reason, becomes disqualified from conducting business in the State of Ohio, Consultant will immediately notify the Attorney General in writing and will immediately cease performance of contract activities.

C.  Consultant must comply with the same standards of behavior as set forth in the Truth in Lending Act, 15 USC 1601 et seq., the Fair Credit Reporting Act, 15 USC 1681 et seq., and the Fair Debt Collection Practices Act, 15 USC 1692 et seq. as amended and any and all ancillary or collateral laws, regulations, administrative laws that apply to the above.

## XVII.  DRUG FREE WORKPLACE

A.  Consultant agrees to comply with all applicable federal, state and local laws regarding smoke-free and drug-free work places and shall make a good faith effort to ensure that none of its employees or permitted subcontractors engaged in the work being performed hereunder purchase, transfer, use, or possess illegal drugs or alcohol, or abuse prescription drugs in any way.

## XVIII.  CAMPAIGN CONTRIBUTIONS

A.  Consultant hereby certifies that neither Consultant nor any of Consultant's partners, officers, directors, shareholders nor the spouses of any such person have made contributions in excess of the limitations specified in Ohio Rev. Code § 3517.13.

B.  Consultant shall, at all times, have a completed Affidavit of Eligibility, in the form attached as Exhibit C on file with the Attorney General. Consultant should submit this document at the time of contract execution. Failure to provide a completed Affidavit of Eligibility will result in termination of this Agreement.

## XIX.   ENTIRE AGREEMENT/WAIVER

A.  This Agreement incorporates the Request for Qualifications for Delinquent Debt Collection Vendors for Fiscal Year 2010 (the "RFQ") and Consultant's response to the RFQ by reference. This Agreement, including exhibits and documents incorporated by reference, constitutes the entire agreement between the parties hereto and shall not be modified, amended or supplemented, or any rights herein waived, unless specifically agreed upon in writing by the parties hereto. In the event of a conflict between the terms of the body of this Agreement and any exhibits, the body of this Agreement will control.

B.  This Agreement supersedes any and all previous agreements, whether written or oral, between the parties.

C.  A waiver by any party of any breach or default by the other party under this Agreement shall not constitute a continuing waiver by such party of any subsequent act in breach of or in default hereunder.

## XX.    NOTICES

A.  All notices, consents, and communications hereunder shall be given in writing, shall be deemed to be given upon receipt thereof, and shall be accomplished by personal delivery or by United States Certified mail, return receipt requested, postage prepaid, addressed to the other party. All notices, consents and communications hereunder shall be addressed to the Section Chief of Revenue Recovery Services in the Attorney General and mailed to 150 E. Gay St., 21st Floor, Columbus, OH 43215 or such other address as the Attorney General may hereafter designate in writing.

## XXI.   HEADINGS

A.  The headings in this Agreement have been inserted for convenient reference only and shall not be considered in any questions of interpretation or construction of this Agreement.

## XXII.  SEVERABILITY

A.  The provisions of this Agreement are severable and independent, and if any such provision shall be determined to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provision shall, to the extent enforceable in any jurisdiction, nevertheless be binding and enforceable.

## XXIII. CONTROLLING LAW

A.  This Agreement and the rights of the parties hereunder shall be governed, construed, and interpreted in accordance with the laws of the State of Ohio.  Consultant consents to jurisdiction in a court of proper jurisdiction in Franklin County, Ohio.

## XXIV. SUCCESSORS AND ASSIGNS

A.  Neither this Agreement, nor any rights, duties, nor obligations hereunder, may be assigned or transferred in whole or in part by Consultant, without the prior written consent of the Attorney General.

## XXV.  FINDINGS FOR RECOVERY

A.  If the potential compensation to Consultant under this Agreement exceeds $25,000, Consultant warrants that it is not subject to an "unresolved" finding for recovery under O.R.C. Section 9.24.

B.  If this warranty is found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVI. DEBARMENT

A.  Consultant represents and warrants that it is not debarred from consideration for contract awards by the Director of the Department of Administrative Services, pursuant to either O.R.C. Section 153.02 or O.R.C. Section 125.25.  If this representation and warranty is found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVII.DECLARATION REGARDING MATERIAL ASSISTANCE/NONASSISTANCE TO A TERRORIST ORGANIZATION

A.  If the potential compensation to Consultant under this Agreement exceeds $100,000, Consultant hereby represents and warrants to the Attorney General that it has not provided any material assistance, as that term is defined in O.R.C. Section 2909.33(C), to any organization identified by, and included on, the United States Department of State Terrorist Exclusion List and that it has truthfully answered "no" to every question on the "Declaration Regarding Material Assistance/Non-assistance to a Terrorist Organization," available at http://homelandsecurity.ohio.gov/dma/dma.asp.  Consultant further represents and warrants that it has provided or will provide such to the Attorney General prior to execution of this Agreement.

B.  If these representations and warranties are found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVIII.   ANTITRUST ASSIGNMENT

A.  Consultant assigns to the Attorney General all State and Federal antitrust claims and causes of action that relate to all goods and services provided for in this Agreement.

## XXIX. EXECUTION

A.  This Agreement is not binding upon the Attorney General unless executed in full, and is effective as of date of signature by the Attorney General.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers.

**CONSULTANT**
**RELIANT CAPITAL SOLUTIONS, LLC**
**750 Cross Pointe Road, Suite G**
**Gahanna, OH  43230**

By: _Margie Bricker_

Name: _Margie Bricker_

Title: _President, CEO_

Date: _9/24/09_

**OHIO ATTORNEY GENERAL**

By: _Sue Hamilton_

Sue Hamilton
Chief of Operations, Administration

Date: _09.30.09_

By: _Darla Kay Reardon_

Darla Reardon
Chief, Revenue Recovery Section

Date: _9 130/09_

*Approval as to form:*

By: _Amy Minardo_

Name: _Amy Minardo_

Title: _Chief, Business Counsel Section_

Date: _9/30/09_

**EXHIBIT A**
**Scope of Work**

1. Consultant will provide collection services on assigned Accounts as directed by Attorney General and as described in Consultant's response to the RFQ.

2. Consultant may establish a payment plan with a debtor, so long as the payment plan complies with Attorney General policies and procedures. No payment plan established by Consultant shall exceed five years in length without prior written approval of the Attorney General's Director of In-House Collections.

3. The Consultant shall be responsible for printing and mailing all letters generated during the collection process. All correspondence must have the approval of the Attorney General. The Consultant shall update the Attorney General's collections system as to all collection activity.

4. Consultant will comply with all reporting requests and procedures established Attorney General.

5. Consultant must have and maintain in good working order the type of equipment necessary for electronic information storage and maintain security on this equipment, firewalls and security processes as required by the Attorney General for the duration of the contract, including any required upgrades. Consultant must maintain the ability to transmit and receive electronic files and reporting and utilize standard file formats as determined by the Attorney General.

6. At its own expense, Consultant shall provide all necessary computer equipment, and licensing fees including but not limited to CUBS software, scanners, terminals, printers, workstations, communication equipment, and telephone circuits needed to perform the services required by the Attorney General under this contract and be responsible for all licensing fees, other software costs, and other expenses related to the requirements of the Attorney General for the duration of the contract.

7. The Attorney General will provide adequate ports to allow access to its computer collection system. The Contractor will identify by named user how many ports are necessary to perform the terms, conditions and requirements of the contract.

8. Consultant must own the following equipment and software for the duration of the contract:

    i. Pentium Dual Core 2.8 GHz Processor or above;
    ii. 1GB RAM. When running more applications simultaneously, in addition to the Windows operating system and RPCS, more memory may be required;
    iii. CD-ROM drive - 1000 MB Ethernet Network Interface;
    iv. Windows compatible mouse, keyboard and monitor;
    v. TCP/IP Network Protocol; and
    vi. Microsoft Windows 2000, 2003 or XP CU•EMULATE 3.0 from RevQ (v2.4i or higher acceptable).

9. Consultant agrees to abide by all policies and procedures promulgated by the Attorney General relating to collection of claims.

10. Consultant agrees to provide the Attorney General with immediate access to all documents, papers, records, computer searches involving the services to be performed, upon request.

11. Consultant shall maintain a written policy regarding customer service for its staff and personnel and file a copy of the policy with the Section Chief of the Revenue Recovery Services Section at the time of contract execution. Consultant must also submit any updates to this policy throughout the contract term.

12. Consultant shall provide an annual training session for all of Consultant's staff regarding customer service practices and any updated information regarding policy and procedures for the Accounts assigned by Attorney General. Consultant shall notify Attorney General in writing after training session has been completed.

**EXHIBIT B**

## ASSOCIATION CODE OF ETHICS AND PROFESSIONAL RESPONSIBILITY

As amended October 8, 2004

### RULE 1.        CONDITIONS OF MEMBERSHIP

Upon becoming a Member of the American Collectors Association, Inc., ("Association") and as a condition of membership renewal, each member of this Association agrees to the following rules composed of the Association Code of Operations, the Association Code of Ethics and Professional Responsibility and the Association Procedural Rules for the Ethics and Professional Responsibility Committee.

### RULE 2.        PROFESSIONAL MISCONDUCT

It shall be deemed professional misconduct for a Member;
**2.01** to knowingly violate the United States Fair Debt Collection Practices Act with reckless disregard for its provisions;
**2.02** to knowingly violate any federal or state law pertaining to collection and credit industry practices and procedures, with reckless disregard for its provisions;
**2.03** to have been convicted of any crime that directly relates to credit or collection industry practices or procedures;
**2.04** to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation including misrepresentation for the purpose of obtaining a license, certificate, or business-related insurance;
**2.05** to harass a person on the basis of race, sex, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with a Member's professional business, Association activities, or while acting in a representative capacity of Association;
**2.06** to engage in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public;
**2.07** to knowingly misrepresent an institution or organization with which the Member is affiliated or conversely, to knowingly represent that it is affiliated with an institution or organization when such an affiliation does in fact not exist. However, this provision does not preclude a Member from:
**2.07(a)** using their Association titles at any time, in any activity, directly related to Association, Association Enterprises, Inc., and/or Collectors Insurance Agency, Inc.
**2.07(b)** using their titles in connection with activities not related to Association, the Association for-profit arm, or Collectors Insurance Agency, Inc., when such activities constitute a community service effort or a public relations effort likely to benefit the credit/collection industry.
**2.07(c)** using their Association titles or designations in any situation or manner that does not otherwise create the impression or otherwise tend to lead someone to believe that a product is endorsed by Association or was created by Association, its affiliates, or subsidiaries;
**2.07(d)** developing, selling or promotion competitive products, so long as the Member's Association title or designation is not used in connection with the development, sale or promotion of such products.

### RULE 3.        ETHICAL CONDUCT AND PROFESSIONAL RESPONSIBILITY EXPECTATIONS OR MEMBERS

It shall be deemed to be the ethical and professional responsibility of each Member; 3.01 to make reasonable efforts to ensure that the Member personally, as well as all of Member's personal, are

familiar with the laws under which the collection business is conducted, the Association Code of Ethics and Professional Responsibility, the Procedural Rules for the Association Ethics Committee, and the Association Code of Operations, and that they comply with these laws, rules, and regulations to the best of their abilities;

**3.02** to take adequate precautions to distinguish between his or her professional views and the views of Association, its subsidiaries, and affiliates when communicating to third parties, including, but not limited to, the Member's employees, personal, students, creditor-clients, non-Member collection agencies, and political representatives;

**3.03** not to communicate, share, or distribute any information which the member acquires in the course of performing his or her duties as an Association Member, officer, director, committee Member, or instructor which could have a detrimental impact upon the business or reputation of any other Member of Association, its affiliates, or subsidiaries, nor shall any Member use any information described herein to promote his or her self-interest or business interest.

## RULE 4.        AMENDMENTS

The foregoing may be amended or altered in whole or in part by a majority vote of the Association Ethics and Professional Responsibility Committee. Any such amendments are then subject to final approval of the Association Executive Committee. Notification of approved changes shall be sent promptly to the Association Membership using the most appropriate communications medium(s).

**EXHIBIT C**
**AFFIDAVIT OF ELIGIBILITY FOR CONTRACTOR**
**APPOINTMENT**

STATE OF _Ohio_ :

COUNTY OF _Franklin_ : SS.

The undersigned, being first duly sworn, deposes and says as follows:

    1.  Contractor makes this affidavit to certify its eligibility to enter into this Agreement.

    2.  Contractor hereby certifies that Contractor is not disqualified under R.C. 3517.13 from being awarded a contract by Ohio Attorney General Richard Cordray.

3.  Contractor hereby certifies that all applicable parties listed in R.C. 3517.13 are in full compliance with the requirements of that provision.

4.  Contractor recognizes that any contract awarded in violation of R.C. 3517.13 may be rescinded and that three times any amount contributed in violation of R.C. 3517 may be recoverable by the State of Ohio.

5.  Contractor further recognizes that, pursuant to R.C. 3517.992(R)(3), knowingly making a false statement on this certification is a fifth degree felony.

_Margie Brickner_
SIGNATURE

_Margie Brickner_
PRINTED NAME

_Reliant Capital Solutions, LLC_
ORGANIZATION NAME

_9/24/09_
DATE

**NOTICE OF PENDING LAWSUIT**

August 8th, 2011                                     Certified Mail # 7009 1680 0000 5713 9255

*Claimant*:          Virgil K Stimer
                     C/o General Delivery
                     Tucson, Arizona  85726


*Respondent:*        RELIANT CAPITAL SOLUTIONS, LLC
                     750 Cross Point Road, #G,
                     Columbus Ohio 43230-6692.

**Notice to the agent is notice to the principal.  Notice to the principal is notice to the agent**

*Re:*  Two phone calls, on the dates of September 17th, 2010 and September 22nd, 2010, placed by a person or persons (one person confirmed to be Matt Ruggles), claiming that RCS is an authorized agent of the Ohio Attorney General and that person making allegations of debts owed to the State of Ohio by Virgil K. Stimer.

Attention Legal Department,

      This is document being sent prior to the filing of a lawsuit in order to provide Reliant Capital Solutions LLC, (herein after referred to as, "RCS"), an opportunity to amicably cure RCS's violations of the Fair Debt Collections Procedures Act, (FDCPA) 15 U.S.C. § 1692e False or misleading representations.

      On Friday September 17th, 2010, about 10 am Mountain Time, I received a call on my cell phone from a person who said that he was from RCS and that RCS was an ***agent of the Ohio Attorney General*** and that I owed money to the State of Ohio.  The telephone reception was poor and so the caller said he would call back on Monday.  Upon checking my phone records, the call was dialed from 614- 452-6097. The caller did not call back on Monday.  On Wednesday, September 22nd, 2010, about 10:30 am Mountain Time, a person identifying himself as Matt left a message on my cell phone saying, "Hi Mr. Stimer, this is Matt from RCS, authorized agent of the Ohio Attorney General," telling me to call 866-738-3182.  I have saved the recording of that message.

      On Thursday, September 23, 2010, I placed a phone call to RCS to inquire about the person named Matt who claimed that RCS is an ***authorized agent of the Ohio Attorney General.***  A woman answering the phone confirmed that a Matt with the last name of Ruggles worked for RSC.

      Since receiving phone calls from Matt Ruggles, I have obtained a copy of the agreement between RCS and the Ohio Attorney General and on page two of the agreement it specifically states,

      ***"G. It is fully understood and agreed that Consultant is an independent contractor and neither Consultant nor its personnel shall at any time,  for any purpose, be considered as agents, servants or employees of the Attorney General of the State of Ohio."***

Both phone calls from RCS are in violation of the Fair Debt Collections Procedures Act, (FDCPA) Title 15 U.S.C. 1692e. False or misleading representations, (10) *"The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"*

Through the false and deceptive practices of RCS, I have been damaged as the result of the stress I suffered believing that I was dealing with the Ohio Attorney General instead of third-party debt collector and damaged by the amount of time that I have had to use in order to learn how to deal with this problem without hiring an attorney.  A fair estimation of the total amount of time that I have had to use doing research and document work is 232 hours at the rate of $25.00 per hour equals $5800.00.  I am prepared to pursue each of the two violations of the FDCPA 15 U.S.C. § 1692e by RCS individually with separate court cases.

I am willing to settle these matters amicably without having to file suit and I am giving you ten days from receipt of this letter to take the opportunity to do so.  If RCS chooses not to settle the matters at hand then I will have no choice but to file suit and seek my remedy in a court of law.  Enclosed is a copy of a complaint that I will be filing to the court in the event that we cannot settle this matter amicably. If it is necessary for me to go to court with this issue, the cost for the court filing fee of $350.00 and $1000 for pain and suffering shall be added to the $5800.00 and an additional $1000.00 (pursuant to 15 U.S.C. 1692k. Civil liability) will be also added, bringing the total amount that I will be seeking to $8150.00.  Also, if I do have to resort to the court for a remedy, I will also require the name of the company who provides bonding for RCS in order to make a claim for damages.

You may contact me at through email, paydoc@yahoo.com or by sending your response to Virgil Stimer, C/o General Delivery, Tucson Arizona, 85726.  Do not contact me by phone unless I notify you by email that you may call.  You may not use my email address for any other reason than to settle this matter of the pending lawsuit

Respectfully,

_____Date_____,2011
    Virgil K Stimer

**CERTIFICATE OF SERVICE**

On the _____9 M_____ day of _____August_____, 20_11_ the undersigned did make service of attached/enclosed document(s) listed as follows:

_____Notice of Pending lawsuit & Complaint_____

upon the recipient at the address that follows: _____Reliant Capital Solution LLC_____
_____750 Crosspoint Rd # 6_____
_____Columbus Ohio 43250-669)_____

via   [✓] **Certified  Mail #** _____7009 1680 0000 5773 9355_____

[ ] **Registered   Mail #** _____

[ ] **Regular Mail.**

**Jurat**

I swear under the penalties of perjury that I have read the contents of this document and that it is true and correct according to my own first-hand knowledge and to the best of my understanding.

_____Sandra Remcant_____

STATE OF                          )
                                 )
COUNTY OF                        )

Signed and affirmed before me, on this _____day of _____, 2011, personally  appeared, _____ whose identity was proven to me on the basis of satisfactory evidence and who personally appeared before me, is the same living soul whose name is subscribed to this document and that she voluntarily signed the document.

_____

Notary signature

My Commission Expires_____

Exhibit G
page 3